UNITED STATES DISTRICT COURT
DISTRICT OF NORTH CAROLINA
EASTERN DISTRICT

| | |
|---|---|
| LAUREN DAVIS, *on behalf of herself and others similarly situated*, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SAFE STREETS USA LLC, a Delaware Company, and ALWAYS PROTECTED SECURITY, LLC, a Delaware Company, )<br>)<br>)<br>Defendants. )<br>) | Civil Action No.:<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL

### NATURE OF THIS ACTION

1. Lauren Davis ("Plaintiff") brings this class action lawsuit against Defendants Safe Streets USA LLC ("Safe Streets") and Always Protected Security, LLC ("Always Protected") (collectively referred to herein as "Defendants") for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"), a federal law designed to curb the onslaught of abusive telemarketing practices in this country.

2. Defendants routinely and systematically violated the TCPA and its implementing regulations (47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2)) by using an automatic telephone dialing system to deliver non-emergency marketing text messages promoting ADT's home alarm products and services without the prior express written consent of the recipients as is required by law.

3. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences and as to all other matters upon information and good faith belief, including due investigation by undersigned counsel.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 47 U.S.C. § 227(b)(3) and 28 U.S.C. § 1331.

5. This Court has personal jurisdiction over Defendant Safe Streets because of its registration with and principal place of business in the State of North Carolina.

6. This Court has personal jurisdiction over Defendant Always Protected Security because it engaged in telemarketing conduct within this District. Furthermore, Always Protected Security had a contractual relationship as a sub-dealer for Defendant Safe Streets, which is headquartered in this District.

7. Venue is proper before this Court under to 28 U.S.C. § 1391(b) as Safe Streets is headquartered in this District and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## PARTIES

8. Plaintiff is a natural person who at all relevant times resided in Dallas, Texas.

9. Defendant Safe Streets is a Delaware limited liability company with its principal place of business in Garner, North Carolina, 27529.

10. Defendant Always Protected Security is a Delaware limited liability company with its principal place of business in Springfield, Virginia 22150.

## FACTUAL ALLEGATIONS

*The Dealership Arrangement between ADT, Safe Streets & Always Protected Security.*

11. ADT provides residential, small and large business electronic security, fire protection and other related alarm monitoring services.

12. ADT sells home alarm products and services through a network of authorized dealers, such as Safe Streets.

13. Safe Streets is, according to its website, one of ADT's oldest, largest and most respected Authorized Dealers.

14. As an ADT Authorized Dealer, Safe Streets markets, sells and installs ADT-monitored security systems.

15. Through its Dealer Program, sub-dealers can take advantage of Safe Streets' resources and achieve all the benefits of being an ADT Authorized Dealer.

16. Sub-dealers under the Safe Streets umbrella earn equity payments for monitoring accounts they sell to ADT.

17. Always Protected Security is an approved Sub-Dealer for Safe Streets.

18. As an approved Sub-Dealer for Safe Streets, Always Protected Security is part of Safe Streets' Dealer Program.

19. Always Protected Security boasts that it specializes in providing homeowners smart home technology, affordable pricing, superior service and monitoring.

20. Always Protected Security installs ADT products in every state across the Country whereas the monitoring of the alarm systems (and the billing for those services) are direct with ADT.

21. Upon investigation and belief, in order to increase its sales, Safe Streets (an ADT Authorized Dealer) and Always Protected Security (an ADT sub-dealer for Safe Streets) market ADT's products and services.

22. One of the ways that Defendants market those products and services is by sending automated text messages to realtors whose clients have recently closed deals (purchased homes) in order to get those realtors to provide the contact information for their clients (the new homeowners) so that can attempt to sell them ADT security systems and monitoring fees.

***Defendants Sent Unsolicited Automated Text Messages to Realtors to Obtain Leads to Sell Home Security Products and Monitoring Services.***

23. Plaintiff is, and has been at all times relevant to this action, the regular and sole user of her cellular telephone number—(214) 471-XXXX.

24. On or about April 15, 2019 (and at all relevant times), Plaintiff was employed as a realtor in the Dallas, Texas area.

25. On April 15, 2019, Plaintiff received the following unsolicited text message sent by or on behalf of Defendants:





26. The website link (https://tapit.us/eGLsG) embedded in the text navigates to a lead generation webpage by which Always Protected Security attempts to capture contact information for both the realtor and the new homeowner(s). That ADT's Home Security Referral Form states as follows:





(https://alwaysprotected.wufoo.com/forms/m18e8pir1rrxmg8/) (last visited September 15, 2019)

27. Defendants are sending unsolicited text messages to realtors to get them to provide contact information for new homebuyers so that they can, in turn, send unsolicited marketing messages to them and attempt to sell ADT's home security products and services.

8

28. The short code that Defendants used to send the text message at issue to Plaintiff—797-979—is a dedicated, vanity short code, which is, upon information and belief, owned by CallFire, Inc.

29. "A short code is a number with fewer digits than a phone number to which a text message can be sent. The five-or six-digit numbers are often promoted in traditional and digital advertising. Companies use these codes to bring customers into the branded experience through voting, surveys, sweepstakes, coupon offers, information updates, loyalty programs and alerts."[1]

30. "A dedicated short code is an SMS short code that is used and paid for exclusively by one brand. A dedicated short code is different from a shared short code, because a shared short code is used and paid for by multiple brands."[2]

31. "A vanity short code, is a 5-6 digit phone number that is specifically selected by a brand, rather than selected at random by the Common Short Code Administration (CSCA)."[3]

32. CallFire is a is technology services company based in Santa Monica, California.

33. CallFire "provides the most powerful and versatile SMS text messaging platform on the market. Whether you want to send out promotions, discounts, updates or notifications—text marketing lets you reach thousands instantly."[4]

34. CallFire's "platform is scalable to hundreds of thousands of messages."[5]

---

[1] https://usshortcodes.com/faqs (last visited September 9, 2019)

[2] https://usshortcodedirectory.com/faq/what-is-a-dedicated-short-code/ (last visited September 9, 2019).

[3] https://usshortcodedirectory.com/faq/what-is-a-vanity-short-code/ (last visited September 9, 2019).

[4] https://www.callfire.com/products/text-messaging (last visited August 29, 2019).

[5] *Id.*

35. Plaintiff did not give Defendants prior express written consent to send text messages to her cellular telephone number using an automatic telephone dialing system.

36. Upon information and good faith belief, and in light of the nature and character of the text message at issue—standardized and consistent in structure and format—as well as CallFire's public statements regarding its users' ability to send thousands of messages instantly, the advertisement and marketing text message at issue was sent using an automatic telephone dialing system.

37. Upon information and good faith belief, and in light of the nature and character of the text message at issue—standardized and consistent in structure and format—as well as CallFire's public statements regarding its users' ability to send thousands of messages instantly, the advertisement and marketing text message at issue was sent by using "equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." *See, e.g*, *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018).

38. The text messages at issue were sent for non-emergency purposes.

39. Upon information and good faith belief, the text messages at issue were sent voluntarily.

40. Upon information and good faith belief, Defendants had knowledge that an automatic telephone dialing system was used to send the text messages at issue.

41. The purpose of the text messages was to advertise and to market Defendants' businesses.

42. Plaintiff suffered actual harm as a result of the text message at issue in that she suffered an invasion of privacy, an intrusion into her life and a private nuisance.

43. Upon information and good faith belief, Defendants use an automatic telephone dialing system to send unsolicited marketing text messages, absent prior express written consent, to telephone numbers assigned to a cellular telephone service.

### *Safe Streets' Liability for the Unsolicited Marketing Messages at Issue.*

44. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA,* CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

45. In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

46. In fact, the Federal Communication Commission has instructed that sellers such as Safe Streets may not avoid liability by outsourcing telemarketing to third parties, such as Always Protected Services:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

47. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[6]

48. Safe Streets is liable for Always Protected Services' telemarketing texts, as it, upon information and belief, contracted with Always Protected Services to bring in new customers and knew it does so through telemarketing.

49. Safe Streets knew or reasonably should have known that Always Protected Services was sending or causing to be sent unsolicited marketing text messages.

50. Any reasonable seller that accepts telemarketing call leads from lead generators would, and indeed must, investigate to ensure that those calls were made in compliance with TCPA rules and regulations.

51. Safe Streets has previously been sued for the telemarketing conduct of its vendors. *See Fitzhenry v. ADT LLC, et al,* No. 5:19-cv-394-BO (W.D.N.C. May 10, 2019).[7]

52. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *May 2013 FCC Ruling* at 6592-593 (¶ 46). Evidence of circumstances pointing to

---

[6] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

[7] Originally filed in the District Court for the Southern District of Florida as *Fitzhenry v. ADT LLC, et al,* No. 5:19-cv-394-BO (W.D.N.C. May 10, 2019), that case against Safe Streets was transferred to the District Court for the Eastern District of North Carolina on September 10, 2019 ((*Fitzhenry v. ADT LLC, et al,* No. 7:19-CV-174-BO (E.D.N.C. May 10, 2019)) before being redesignated the same day to the Western District of North Carolina (*Fitzhenry v. ADT LLC, et al,* No. 5:19-cv-394-BO (W.D.N.C. May 10, 2019). *See id.* at ECF Nos. 31 and 33.

apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

### *The Telephone Consumer Protection Act.*

53. The Telephone Consumer Protection Act, 47 U.S.C. § 227, prohibits the placement of calls to individuals without their consent. *See* 47 U.S.C. § 227(b)(1)(A)(iii) ("It shall be unlawful for any person within the United States . . . to make any call . . . using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service . . . .").

54. To state a claim for a violation of the TCPA, a plaintiff must only show that he or she received a call made using an ATDS or featuring a prerecorded voice; "[c]onsent is an affirmative defense to liability under the TCPA." *Cartrett v. Time Warner Cable, Inc.* 157 F. Supp. 3d 448 (E.D. N.C. January 14, 2016).

55. Text messages are calls and are therefore subject to the TCPA. *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666 (2016); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

56. The TCPA provides for damages in the amount of $500 for each negligent violation and $1,500 for each knowing violation. *See* 47 U.S.C. § 227(b)(3).

57. 47 U.S.C. § 227(b)(1)(A)(iii) makes it "unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular

telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . . ."

58. 47 C.F.R. § 64.1200(a)(2) additionally states, with respect to advertisement and telemarketing calls—of which Defendants' texts to Plaintiff are—that "[n]o person or entity may . . . [i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party . . . ."

59. 47 C.F.R. § 64.1200(f)(8) defines "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

60. The text messages at issue were unsolicited, appearing to be simply repeated form messages, and coming from SMS short codes rather than 10-digit numbers. Similar facts are routinely found sufficient to support TCPA claims. *See, e.g., Collins v. Travel, Entm't, & Marketing, LLC,* 2017 WL 85446, at *4–5 (N.D. Ill. Jan. 10, 2017) (stating "that spam now comes in the 'form of unwanted text messages of all kinds'") (collecting cases); *Serban v. Cargurus, Inc.*, 2016 WL 4709077 (N.D. Ill. Sept. 8, 2016) ("Details supporting use of an ATDS may include the promotional content or the generic, impersonal nature of the text message; that

14

the message was sent from an SMS shortcode; [and] that members of the putative class received the same messages.") (internal quotations & citations omitted)

61. To make things worse, a review of online complaints and court dockets shows that consumers across the country have found themselves inundated with Defendants' unsolicited marketing calls and texts.

62. As a result, Ms. Davis and those like her have suffered lost utility of their phones—through diminished battery life and capacity incurred by receiving the text messages—lost time responding to the calls, and, where applicable, lost money or paid-for text-message allocations.

63. Plaintiff did not give Defendants prior express written consent to send text messages to her cellular telephone number by using an automatic telephone dialing system.

64. Upon information and good faith belief, Safe Streets and Always Protected Security sent text messages to Plaintiff's cellular telephone number and the cellular telephone numbers of the members of the class for the benefit of ADT.

## CLASS ACTION ALLEGATIONS

65. Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following class:

> All persons to whom, on or after four years prior to filing of this complaint in this action, (1) received a text message, (2) made by or on behalf of Defendants, (3) regarding ADT home security services, and for whom (4) Defendants do not claim to have obtained prior express written consent, or claim to have obtained prior express written consent in the same manner they claim to have obtained prior express written consent from Plaintiff.

66. The following individuals are excluded from the class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their

15

parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendants have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the class definitions following appropriate discovery.

67. **Numerosity:** The exact size of the Classes is unknown and unavailable to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants sent unsolicited text messages to thousands of individuals who fall into the Class definitions. Class membership can be easily determined from Defendants' records.

68. **Typicality:** Plaintiff's claims are typical of the claims of the other members of the Classes. Plaintiff is a member of the Classes, and if Defendants violated the TCPA with respect to Plaintiff, then it violated the TCPA with respect to the other members of the Classes. Plaintiff and the Classes sustained the same damages as a result of Defendants' uniform wrongful conduct.

69. **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

   a. Defendants' conduct, pattern, and practice as it pertains to delivering advertisement and telemarketing text messages;

   b. Defendants' use of an automatic telephone dialing system as defined by the TCPA;

   c. Defendants' violations of the TCPA; and

   d. The availability of statutory penalties.

70. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

71. In addition, the members of the class are identifiable in that, upon information and belief, their cellular telephone numbers, names, and addresses can be identified in business records maintained by Defendants, and by third parties.

72. Defendants used an automatic telephone dialing system deliver text messages to Plaintiff's cellular telephone number.

73. Plaintiff's claims, and the claims of the members of the class, originate from the same conduct, practice, and procedure on the part of Defendants.

74. Plaintiff's claims are based on the same theories as are the claims of the members of the class.

75. Plaintiff suffered the same injuries as the members of the class.

76. Plaintiff will fairly and adequately protect the interests of the members of the class.

77. Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the class.

78. Plaintiff will vigorously pursue the claims of the members of the class.

79. Plaintiff has retained counsel experienced and competent in class action litigation.

80. Plaintiff's counsel will vigorously pursue this matter.

81. Plaintiff's counsel will assert, protect, and otherwise represent the members of the class.

17

82. A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

83. If brought and prosecuted individually, the claims of the members of the class would require proof of the same material and substantive facts.

84. The pursuit of separate actions by individual members of the class would, as a practical matter, be dispositive of the interests of other members of the class, and could substantially impair or impede their ability to protect their interests.

85. The pursuit of separate actions by individual members of the class could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendants.

86. These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the class.

87. The damages suffered by each individual member of the class may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the class to redress the wrongs done to them.

88. The pursuit of Plaintiff's claims, and the claims of the members of the class, in one forum will achieve efficiency and promote judicial economy.

89. There will be no extraordinary difficulty in the management of this action as a class action.

90. Defendant acted or refused to act on grounds generally applicable to the members of the class, making final declaratory or injunctive relief appropriate.

# COUNT I
## VIOLATION OF 47 U.S.C. § 227(B)(1)(A)(III)
## (ON BEHALF OF PLAINTIFF AND THE CLASS)

91. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-90.

92. Defendants and/or their agents sent unsolicited text messages to Plaintiff and the other members of the Class.

93. Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2) by utilizing an automatic telephone dialing system to send advertisement and telemarketing text messages to Plaintiff's cellular telephone number, and the cellular telephone numbers of proposed class members, without prior express written consent.

94. Defendants' conduct was negligent, or willful or knowing.

95. Defendants have, therefore, violated 47 U.S.C. § 227(b)(1).

96. As a result of Defendants' conduct, Plaintiff and the other members of the Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

97. Plaintiff and members of the putative class are entitled to and seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by using an automatic telephone dialing system to deliver non-emergency marketing text messages promoting ADT's home alarm products and services without the prior express written consent of the recipients.

## PRAYER FOR RELIEF

**WHEREFORE**, for herself and all the class members, Plaintiff prays for relief and judgment, as follows:

98. Enjoining Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, including continuing to deliver text messages to Plaintiff's cellular telephone number, and to the cellular telephone numbers of the members of the Class, without prior express written consent;

99. A judgment granting Plaintiff and the other putative Class members $500 in statutory damages per violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3);

100. An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes; and

101. Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Date: October 15, 2019

/s/ Scott C. Harris
Scott C. Harris
N.C. Bar No. 35328
Whitfield Bryson & Mason LLP
900 W. Morgan St
Raleigh, North Carolina 27603
Phone: 919.600.5003
Fax: 919.600.5035
*Counsel for Plaintiff & the proposed Class*

20

Case 5:19-cv-00455-D   Document 1   Filed 10/15/19   Page 20 of 20